## The Bartholomay Brewery Company *v.* William Thomeier and Andrew M. Gundaker, Appellants.

*Evidence—Materiality—Suretyship.*

Defendants gave an obligation guaranteeing the payment of indebtedness of Thomeier from time to time, to plaintiff, to an amount not to exceed $500, in which it was provided that the agreement should continue until defendants, or either of them, gave written notice that it should not be binding for further indebtedness. In suit on said bond Gundaker, the surety, offered to prove that he told the agent of plaintiff that he would give him notice to terminate his liability on the bond; that the agent replied that if he would not do so he would reduce the liability to a single car of beer, to be followed by evidence that this was not done. *Held*, that in the absence of an offer to show that the agent had authority to waive the written notice required by the agreement, and to show whether the car of beer was worth more or less than $500 the offer was immaterial.

*Suretyship—What constitutes a contract of.*

T. and G. executed an obligation to the plaintiff wherein they guaran-

teed to plaintiff " payment of all indebtedness which plaintiff now holds or may hereafter hold against T. and all renewals; all indebtedness or liability upon this guarantee, however, limited to an amount not to exceed $500 at any one time; this agreement being intended as a continuing security and is to bind us as to indebtedness or liability accruing from time to time until we give written notice that it shall not be binding for further indebtedness or liability." *Held*, that the undertaking was one of suretyship on the part of G.

*Evidence—Reformation of contract—Sufficiency of proofs.*

Defendants executed the obligation recited in the foregoing syllabus, and in the suit thereon the surety proved by his own testimony that at the time the obligation was executed it was agreed between himself and the agent of the plaintiff that each car load of beer should be paid for before another was shipped; that a car load should not exceed $400 in value; that the contract between Thomeier and plaintiff made at the same time the obligation was executed provided that each car load should be paid for before another was sent, and that this part of the agreement was violated by the plaintiff. *Held*, that the evidence was not sufficient to change the stipulation of the obligation limiting the liability to $500.

Argued May 19, 1896. Appeal, No. 42, May T., 1896, by defendants, from judgment of C. P. Crawford Co., May T., 1894, No. 49, for plaintiff. Before RICE, P. J., WILLARD, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on obligation under seal. Verdict for plaintiff for $530.

The facts as stated in the opinion of the Superior Court are as follows :

The Bartholomay Brewery Company is a corporation of the state of New York with its principal place of business at Rochester. Prior to its organization two other brewing companies existed in Rochester, one called the Rochester Brewing Company and the other the Bartholomay Brewing Company. These companies were purchased by the plaintiff and as distinct corporations became extinct, all their rights and property passing to and vesting in the Bartholomay Brewery Company. For convenience, however, the accounts were kept separate and the goods were shipped in the name of the old companies.

In 1892 William Thomeier being desirous of entering into the bottling business in Meadville, Pa., was introduced to the appellee by a letter from Andrew M. Gundaker in the month of February, 1892.

On the 8th of March, 1892, Thomeier and the appellee entered into the following contract, " Memoranda of agreement made this 8th day of March, A. D. 1892, between the Bartholomay Brewery Company of Rochester, N. Y. of the first part, and William Thomeier of Meadville, Crawford Co., Pa., of the second part.

" Witnesseth : The party of the first part for and in consideration of the price hereinafter named, agrees to furnish unto the second party, from time to time as his business may require, a good quality of lager beer and of Bohemian beer of their own manufacture f. o. b. in Rochester, N. Y.

" Second party agrees to pay first party six dollars ($6) per barrel for said beer, and six dollars and fifty cents ($6.50) per barrel for Bohemian beer. He also agrees to pay freight on same from Rochester to Meadville, and to return all empties as soon as possible under ordinary circumstances. First party to pay freight for return of empties.

" Second party further agrees that he will not purchase beer from any other source nor use any other manufacture of beer. Each carload to be paid for before another is sent.

" It is further agreed that this contract shall take effect on the 10th day of March, A. D. 1892, and shall be valid for one year.

" In witness of the foregoing contract we have hereunto set our hands and seals the day and year first above written."

At the same time the following bond was executed by Thomeier and Gundaker :

" For value received, we, William Thomeier and Andrew M. Gundaker, of Meadville, Crawford County, Pennsylvania, do hereby guarantee to the Bartholomay Brewery Company, of Rochester N. Y. the payment of any and all indebtedness or liability of any kind which said company now holds or may hereafter hold against the said William Thomeier, and all renewals, and all such liability or indebtedness upon this guaranty, is however limited to an amount not to exceed five hundred dollars ($500) at any one time.

" This is intended as a continuing security, and is to bind us to an indebtedness or liability accruing from time to time until we give, or either of us gives, written notice that it shall not be binding for further indebtedness or liability. :

"Witness our hands and seals this 8th day of March, A. D. 1892."

Gundaker alleges that the contract was signed first and at his request the words "each carload to be paid for before another is sent" were inserted, and that he insisted upon this insertion as a condition before he would sign the bond; that he then signed the bond, but it will be observed that no change was made in that instrument as to the amount of his liability which was fixed as a continuing security to the amount of $500, and the uncertainty of the value of a car load of beer was the disturbing element that led to the litigation in the court below. That Gundaker knew of its uncertainty as to quantity and value is apparent from the testimony. He questioned the agent of the appellee on the subject who told him it might be $400, more or less. With this information before him, Gundaker deliberately signed the bond and bound himself to pay any indebtedness of Thomeier to the appellee not exceeding $500. Thomeier failed in business and became insolvent; Gundaker tried to secure himself by a judgment note from Thomeier for $500 and the assignment of certain book accounts, but realized but little therefrom. Suit was brought on the bond against Thomeier and Gundaker. Gundaker defended on the ground that the appellee shipped beer in violation of the stipulation in the contract, "each carload to be paid for before another is sent."

In connection with this defense, it will be observed from Gundaker's own testimony that six months after the execution of the bond he learned that Thomeier was indebted for beer shipped in the sum of $900 (that would be September 8, 1892), yet he gave no written notice as required in the bond to discontinue his liability. On May 9, 1893, he wrote the following letter:

"MEADVILLE Pa. May 9 1893.

"THE ROCHESTER BREWING CO. Rochester, N. Y.

"Gentlemen: Yours of 7th at hand and noted, also labels inclosed, which I think are very tasty, and will add greatly to the appearance of the bottles. I will see Mr. T. and have a talk with him this evening. It is true as you state he has not the push and energy that a man in this particular business should have; however, I anticipate a better trade for him this

season. We commenced on the building and are pushing it as fast as possible. When Mr. Stahl comes here I will have some suggestions to make to him which may cost you a barrel or less of beer, but then it will be a good investment for you, but however, will leave that to Mr. Stahl's own good judgment, and you can rest assured that I will use every effort to advance the sale of your goods in this place.

" Yours truly,

" A. M. GUNDAKER.

" P. S. Kind regards to Mr. Keiser."

This letter is a direct invitation to continue the delivery of beer to Thomeier, and the deliveries continued uninterrupted until September 18, 1893, when the account was closed with an undisputed indebtedness from Thomeier to the appellee of $1,919.50.

Under the instructions from the learned trial judge, a verdict was rendered in favor of the plaintiff for the full amount of the bond with interest.

The court below, HENDERSON, P. J., charged the jury in part as follows :

Mr. Thomeier, then, having failed to pay the amount of his indebtedness to the Bartholomay Brewery Company, Mr. Gundaker and Mr. Thomeier became liable on the face of the obligation which has been read to you for an indebtedness of Mr. Thomeier to the plaintiff company to the amount of $500. [The paper read in evidence is an undertaking of suretyship on the part of Mr. Gundaker.] [2] He agrees to be responsible for indebtedness of Mr. Thomeier to the Bartholomay Brewery Company to an amount not exceeding $500. If the indebtedness amounts to $500, or over, he would be liable on the face of this obligation signed by him to pay the sum of $500 if Mr. Thomeier failed. And it is not disputed that Mr. Thomeier became insolvent; that his property was sold except that which was incumbered by judgments or mortgages to the full amount of its value ; and that he has not paid any of this bill of $1,900 to the brewery company . . . .

The offer of the defendant, Mr. Gundaker, in this case has already been indicated to you in the testimony of Mr. Gundaker referred to. The apparent effect of the matter to which he

refers, if it were shown to have been a contract at the time to which he was a party, would be to limit his liability under this undertaking to the price of a car load of beer instead of the sum of $500. [Whether, if it clearly appeared that that was the statement of the case and that he made such a contract with the agent of the brewery company, it would be such a collateral undertaking as might be introduced to affect his liability under the contract of suretyship offered in evidence, it is not now necessary to determine ; for I am clearly of the opinion under the evidence of Mr. Gundaker himself that it has not been shown by such clear, precise and indubitable evidence as the law requires, that there was a contemporaneous parol agreement entered into between Mr. Gundaker and the plaintiff company through its agent at the time the contract of suretyship was entered into as would make it permissible for Mr. Gundaker to prove such a contract for the purpose of affecting his liability under the contract of suretyship. There does not appear to the court to be such evidence in the case upon that point as would warrant you in concluding that Mr. Gundaker is for that reason released from his liability under this obligation which he entered into the 8th day of March, 1892.] [3]

[If you are therefore satisfied from the evidence that the beer shipped to Mr. Thomeier was beer shipped by this company under this contract and accepted by Mr. Thomeier without objection or complaint, in pursuance of the contract for the furnishing of the beer by the Bartholomay Brewery Company, the plaintiff is entitled to a verdict in this case for the sum of $500, with interest from the time when this action was commenced; that would be interest for a year. If you have any doubt, gentlemen, upon the subject of whether the beer was furnished under this contract or not, it would be your privilege to consider that question. If you think the preponderance of the evidence is to the effect that the beer was furnished under the contract of the 8th of March, 1892, by the Bartholomay Brewery Company, and that it was furnished from their Rochester Brewery branch, then the evidence warrants a finding of a verdict for the plaintiff of $530. You may put your heads together, gentlemen, if you think there is anything for discussion in the case in that aspect of the case.

(A Juror asks), What was that last remark?

By the Court: If you are not satisfied from the evidence that the beer was furnished by the Bartholomay Brewery Company in accordance with the contract entered into between it and Mr. Thomeier, that subject is for your consideration. Mr. Thomeier, however, testifies that he got the beer under this contract. It was billed as beer from the Rochester Brewing Company, but the evidence of the plaintiff tends to show that the plaintiff company had bought the Rochester Brewing Company and it was merely billed, as a matter of convenience for their own accommodation, as the Rochester Brewing Company. If you believe the evidence offered by the plaintiff on that point and the statement of Mr. Thomeier, there is no other fact in dispute in the case under the ruling of the court.] [4]

Plaintiff's point referred to in the sixth assignment of error had been lost at the time of printing the paper-book and was not filed at the time of argument.

Verdict and judgment for plaintiff for $530.

*Errors assigned* were, (1) offer of evidence quoted in opinion of the Superior Court; (2–4) charge of the court, quoted in brackets; (6) answer to defendants' first point; (7) the court erred in directing the jury to find for the plaintiff.

*H. J. Humes*, of *Humes & Thomas*, for appellants.

*J. W. Smith*, for appellee.—The contract was one of suretyship: Kramph v. Hatz, 52 Pa. 525; 9 Am. & Eng. Ency. of Law, 68; Hall v. Farmer, 5 Denio, 487; Allen v. Hubert, 49 Pa. 259; Marberger v. Potts, 16 Pa. 9; Bentz' Est., 14 Phila. 258; Riddle v. Thompson, 104 Pa. 330.

There was no allegation that the parol agreement proven and claimed to modify the obligation was omitted from the bond by fraud, accident or mistake. It was, therefore, clearly insufficient: Stull v. Thompson, 154 Pa. 43; Irvin v. Irvin, 142 Pa. 272; Wodock v. Robinson, 148 Pa. 503; Baer's App., 127 Pa. 360; Bank v. Hartman, 147 Pa. 558; Cullmans v. Lindsey, 114 Pa. 170; Phillips v. Meily, 106 Pa. 536; Rowand v. Finney, 96 Pa. 192; Liggett v. Shira, 159 Pa. 350.

OPINION BY WILLARD, J., July 16, 1896 :

A statement of the facts in this case becomes necessary in order to show what was before the court below and what is here presented.

(The court here recited the facts as set out in the statement of facts.)

Seven assignments of error appear upon this record which will be disposed of in their order. The appellant offered to prove that Gundaker, about six months after the execution of the bond, when Thomeier owed $900, told the agent of the appellee that he would give him notice to terminate his liability on the bond; that the agent replied that if he would not do so, he would reduce the liability to a single car of beer, to be followed by evidence that this was not done. The offer was properly rejected on the ground of immateriality. The parties had agreed in the bond that the liability could be terminated by notice from either in writing, and there was no offer to show that the agent had any authority to waive the written notice required, nor did the offer designate how much a car of beer was worth, whether more or less than $500.

That the undertaking was one of suretyship on the part of Gundaker was correctly ruled by the trial judge in his charge to the jury. It was so admitted by the appellant's counsel on the trial. Upon the face of the instrument it is an undertaking by both obligors to pay any existing or future indebtedness of Thomeier to the appellee, not exceeding $500, and suit could be brought and maintained against both without first proceeding against and exhausting the property of Thomeier, and from the evidence it is apparent that he had none to exhaust. The instruction was correct: Kramph's Exrs. v. Hatz's Exrs., 52 Pa. 525; Allen v. Hubert, 49 Pa. 259; Marberger v. Potts, 16 Pa. 9; Riddle v. Thompson, 104 Pa. 330.

The third assignment of error raises the important question in the case. Gundaker alleges that at the time he signed the bond, it was agreed by parol between himself and the agent of the appellee that each car load of beer should be paid for before another was shipped, and that a car load should not exceed $400 in value; that this part of the agreement was violated by the appellee. The object of this testimony was admittedly to change the terms of the bond by parol. It was admitted by the court,

and after the testimony was all in the court told the jury in his charge, " I am clearly of the opinion under the evidence of Mr. Gundaker himself that it has not been shown by such clear, precise and indubitable evidence as the law requires, that there was a contemporaneous parol agreement entered into between Mr. Gundaker and the plaintiff company through its agent at the time the contract of suretyship was entered into as would make it permissible for Mr. Gundaker to prove such a contract for the purpose of affecting his liability under the contract of suretyship. There does not appear to the court to be such evidence in the case upon that point as would warrant you in concluding that Mr. Gundaker is for that reason released from his liability under this obligation which he entered into the 8th day of March, 1892." In this instruction we think the court clearly right. The written instrument sought to be changed was the bond upon which Gundaker was to continue as surety until such time as he gave written notice of his withdrawal. His testimony on the subject is here inserted.

Q. What took place between you and Mr. Stahl concerning this bond, and what induced you to sign it?   A. Mr. Stahl told me it would require a bond of some kind, and he says me being the executor of the estate he though it would be proper for me to sign that bond; and I told him I would under conditions. I asked how much of a bond they required, and he said they would require a $500 bond. And I suggested this contract, that if they hold Mr. Thomeier down to one car load of beer, in case he should not pay for that beer there would be enough left of the paraphernalia and bottling machinery that I could recover that and I could save myself. And he said if I would sign the bond he would draw that contract to that effect, and I had him put in that clause. Q. What did he say was the cost of a car load of beer?

Mr. Smith objects.

By the Court: Yes, I think that is in the same line.

A. He said that it never exceeded $400. Said that as a rule it was under, said it hardly ever exceeded $400.

It will be observed that this testimony refers specifically to the character of the written contract between the appellee and Thomeier, which contract was by its terms for only one year and expired on the 8th day of March, 1893; that after the expira-

tion of the contract beer was delivered to Thomeier by the appellee amounting to $3,476.

The bond in no way refers to the contract, and after the expiration of the contract Gundaker gave no written notice of his intention to withdraw from the bond, and afterwards acknowledged his liability for $500, and promised to pay it and asked for time in which to do so. And further, two months after the expiration of the contract between the appellee and Thomeier, he wrote the letter of May 9, 1893, hereinbefore quoted, soliciting a continuance of the relations between the appellee and Thomeier.

The allegations of Gundaker are unsupported by the testimony of any other witness. Thomeier is not questioned when on the stand as to what took place when the bond was executed, and no circumstance corroborates the theory that the bond means that it was conditioned for the payment of a car load of beer, instead of the sum of $500 as clearly expressed in the instrument itself.

Under this testimony no chancellor would reform this bond. There was no allegation of fraud, accident or mistake, and the judge was right in excluding the testimony from the consideration of the jury : Rowland v. Finney et Ux., 96 Pa. 192 ; Phillips v. Meily, 106 Pa. 536 ; Cullmans v. Lindsay, 114 Pa. 170, citing Spencer v. Colt, 89 Pa. 314 ; Baer's App., 127 Pa. 360 ; Irvin v. Irvin, 142 Pa. 272 ; Bank v. Hartman, 147 Pa. 558 ; Woodcock v. Robinson, 148 Pa. 503 ; Stull et al. v. Thompson, 154 Pa. 43.

It is immaterial that the beer was shipped and billed for convenience in the name of the Rochester Brewing Company. The evidence was conclusive that it belonged to the appellee, with whom the contract was made.

The sixth assignment we cannot consider as the point involved is not before us.

The court did not direct the jury to find for the plaintiff as alleged in the seventh assignment. The charge as a whole was correct and not more favorable to the plaintiff than was warranted by the circumstances of the case.

The specifications of error are all overruled and the judgment is affirmed.