# Malone *v.* Stewart, Appellant.

*Principal and surety—Contribution among sureties—Contract.*

Where several persons are sureties on separate bonds and for varying amounts, for the completion of a building, and are compelled for their own protection to complete the building left unfinished by the contractor, they are compellable to contribute in proportion to the amounts of their respective bonds, and if one has paid more than his share, he may compel contribution from the others by a suit in equity, although at the time the suit is instituted there are pending and undetermined certain contested claims arising out of the construction of the building.

Argued Jan. 9, 1912. Appeal, No. 152, Jan. T., 1911, by defendant Patrick S. Smith, from decree of C. P. No. 2, Phila. Co., June T., 1909, No. 903, in equity in case of Edwin B. Malone v. Amelia Stewart and Patrick S. Smith. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for contribution.

SULZBERGER, P. J., filed the following opinion in overruling a demurrer to the bill upon which, after hearing, there was a decree in favor of the plaintiff:

The Stewart Contracting Company contracted with the city of Philadelphia to build a schoolhouse, and gave bonds for faithful performance with the Title Guaranty and Surety Company as surety. Before assuming the suretyship, the latter demanded counter-bonds in the sum of $70,000. Edwin B. Malone, the plaintiff, executed one of these for $10,000, and the defendants, Amelia Stewart and Patrick S. Smith each executed one of the said bonds for $30,000.

The Stewart Contracting Company abandoned the work before completion, and the three counter-sureties, to save themselves from loss, jointly agreed to finish the work.

At this point the controversy arises.

The plaintiff contends that the loss by the contractor's default should be finally adjusted by charging each of the counter-sureties his proportion thereof, as fixed by their bonds to the surety.

The defendants, on the other hand, maintain, in support of their demurrer to the bill, that on the face of the bill itself it appears that no contract relation existed between the plaintiff and defendants establishing as between themselves any proportionate liability; that the averments of the bill show that the plaintiff and defendants jointly agreed to complete the work, and that the legal inference from this state of facts is that their interests were equal. They further contend that as the plaintiff paid one-third of the outlay hitherto made and each of the defendants also paid one-third thereof, such payment is in law a mutual ascertainment of their true relations at the time, and a waiver of any contract theretofore made or of any other relation subsisting between them.

As additional grounds of demurrer it was urged that there are pending and undetermined certain contested claims arising out of the building of the schoolhouse, and that no bill can lie until all such shall have been finally determined, and that therefore the bill must be dismissed.

In Deering v. Earl of Winchelsea (2 Bos. & Pul. 270), decided in 1800, it was held that if A, B and C became bound as sureties for D in three separate bonds, and any one of them be compelled to pay the whole debt of the principal, the two others are compellable to contribute in proportion to the penalties of their respective bonds.

Lord Chief Baron Eyre based his conclusion on the view that "The bottom of contribution is a fixed principle of justice, and is not founded in contract." The reasoning and the judgment in that case have not been disturbed or questioned.

Indeed, in Craythorne v. Swinburne, 14 Ves., Jr., 160

(decided in 1807), Lord Eldon (page 169) stated that he argued the former case and had been much dissatisfied with the judgment, but had since been convinced that the decision was upon right principles.

It follows that when the Stewart Contracting Company abandoned its work, the plaintiff and defendants were, as between each other, co-sureties responsible to the surety in the proportions of one-seventh, three-sevenths and three-sevenths.

At this point they jointly agreed to reduce the loss by agreement between themselves to finish the work. This agreement was not in writing and may have included no other specific terms than those set forth in the bill. These were, in substance, that the money required for completing should be raised by procuring from the defaulting contractor its four promissory notes to the order of plaintiff and defendants and having them discounted by a bank for the defendant, Smith. These notes were for the amounts of $1,500, $4,500, $3,500 and $3,000, respectively, and their proceeds were properly applied. The notes were not paid at maturity, because the defendants refused to admit that the plaintiff was liable only for one-seventh, but insisted that he was liable for one-third. To prevent judgment and execution, he, under protest to defendants, paid one-third, or $4,349.20, to the bank, and the defendants each paid the same amount. As the whole amount paid in settlement of the promissory notes was $13,047.60, it would follow on the principle laid down that the plaintiff was liable only for one-seventh thereof, viz., $1,863.94. As he actually paid $4,349.20, he claims that he has thus far exceeded his true share by $2,485.26, which he may rightfully call upon his co-sureties to pay to him.

At the time when the co-sureties undertook to complete the building, they were not partners and did not intend to create a partnership. They were mutually en-

gaged in the one purpose to reduce their loss, and this purpose rested on the fact that they were co-sureties.

It was quite possible at that moment to enter into an agreement whereby the unequal proportions established by the co-suretyship should be altered and the losses should be borne in equal thirds. No such agreement, however, can be inferred from the bill, and if it ever was made, the defendant must set it forth by answer.

In the absence of such an averment, the legal presumption is that the status of the three-co-sureties remained unchanged and that the completion of the work was not a separate business enterprise but a mere mode of protecting themselves in regard to their co-suretyship.

This disposes of the main point of the demurrer.

The contention that the payment of one-third by the plaintiff warrants a legal inference that the old proportions of the co-sureties were changed, seems to be without force. The question is one of fact and not of law.

The final contention that the bill is premature is equally untenable. That the plaintiff has paid more than his one-seventh is clearly averred. The contention of the defendants that the existence of additional claims against the co-sureties which are contested and have not yet been decided exempts them from present contribution is based on the idea that a present decree could only be partial and that equity will not favor a multiplicity of suits. Their inference is unwarranted. The decree can be so moulded that all litigation will end with it, though, of course, subsequent motions or orders may have to be made. In any event, the fact that the defendants may be held to further liability hereafter, is no equitable reason why they should subject their co-surety to indefinite delays in reimbursing him for what he has already paid on their account. In no event can these pending claims reduce the defendants' liability. They can only increase it.

The whole subject has been treated with thoroughness by Sir R. S. Wright, J., in Wolmershausen v. Gullick, L. R. 2 Ch. Div. (1893), 514. After reviewing all the authorities, he comes to the conclusion (page 529) : "I think I can declare the plaintiff's right, and make a prospective order under which whenever she has paid any sum beyond her share, she can get it back, and I therefore declare the plaintiff's right to contribution, and direct that upon the plaintiff paying her own share, the defendant Gullick is to indemnify her against further payment or liability, and is by payment to her or to the principal creditor or otherwise, to exonerate the plaintiff from liability beyond the extent of her own share. The plaintiff must have liberty to apply in chambers and generally to apply."

This case was cited with approval in Shepheard v. Bray, L. R. 2, Ch. Div. (1906), 235.

In this country, too, we are not without respectable authority.

In Ferrer v. Barrett (4 Jones Equity, N. C., 455, decided in 1859), it was held that a surety, upon the principle of quia timet, may file a bill against a counter-surety to enforce his (surety's) exoneration, though he may not have paid the debt.

We are aware that there are jurisdictions in which this doctrine has not been fully accepted, but there is no case which goes as far as the defendants here ask us to go.

In Gourdin v. Trenholm (25 S. C. 362), the court put its decision on the express ground that Trenholm had at the time of suit brought not paid more than his proportionate share of the debt, and in Washington v. Norwood (128 Ala. 383, 30 So. Repr. 405) ; it was held that "the right of action for contribution at law or in equity accrues when one surety pays more than his share of the common liability."

These are the leading cases that are usually cited against our view. To hold that when, as in this case,

a surety has actually paid more than his share, he may proceed against his co-sureties, is quite consistent with these authorities.

The only ground on which the extreme doctrine contended for by the defendants could be based would be that the surety first sued owes a duty to his co-sureties to stand in the breach, to defend all suits and to pay out his own moneys in order that they may be freed from annoyance and loss. As they all stand on an equality, the existence of such a duty on his part and a correlative right on theirs is purely inconceivable.

We think that none of the defendant's grounds of demurrer can be sustained.

The demurrer is overruled with leave, &c.

*Error assigned* was in overruling the demurrer.

*Theodore F. Jenkins,* with him *J. Washington Logue,* for appellant.—Complainant was not entitled to contributions: Deering v. Earl of Winchelsea, 2 Bos. & Pul. 270; Agnew v. Bell, 4 Watts 31; Craythorne v. Swinburne, 14 Ves. Jr. 160; Ex parte Gifford, 6 Ves. Jr. 805; Cherry v. Wilson, 78 N. C. 164; Martin v. Frantz, 127 Pa. 389; Gourdin v. Trenholm, 28 S. C. 362; Washington v. Norwood, 128 Ala. 383 (30 So. Repr. 405); De La Cuesta v. Ins. Co., 136 Pa. 62; Harvey v. Girard Nat. Bank, 119 Pa. 212; Union Ins. Co. v. Allegheny, 101 Pa. 250; Colwell v. Peden, 3 Watts 327; Boas. v. Updegrove, 5 Pa. 516; Espy v. Allison, 9 Watts 462; Taylor v. Phila. Board of Health, 31 Pa. 73; Peebles v. Pittsburgh, 101 Pa. 304.

*Preston K. Erdman,* with him *Edwin O. Michener,* for appellee.—The liability of the three sureties was in proportion to the amounts of their respective bonds: Deering v. Earl of Winchelsea, 1 Cox Ch. 318; Ellesmere Brewery Co. v. Cooper, L. R. 1 Q. B. Div. (1896) 75; Loring v. Bacon, 57 Mass. 465; Armitage v. Pulver,

37 N. Y. 494; Williams v. Reihl, 127 Cal. 365 (59 Pac. Repr. 762); Springs v. Brown, 97 Fed. Repr. 405; Bell v. Jasper, 2 Ired. Eq. (N. C.) 597; Moore v. Hanscom, 103 S. W. Repr. 665; Bond v. Bishop, 18 La. Ann. 549.

PER CURIAM, February 19, 1912:

The facts in this case are not in dispute and the law applicable to them was correctly stated in the opinion of the learned president judge of the court below overruling the demurrer to the bill. On that opinion the decree is affirmed with costs.