## Hess's Estate.    Bair & Shenk's Appeal.

1. H. and C. became co-sureties for S., who assigned for the benefit of creditors. He afterwards died insolvent. C. paid the obligations; the estates of H. and S. together not being sufficient to pay 50 per cent. of the obligations. *Held*, that C. was subrogated to the claims, and entitled to a dividend on his whole payment from the estate of H.

2. A surety who pays his principal's debt is entitled to be subrogated to all the rights and remedies of the creditor against his co-surety, in the same manner as against the principal.

3. The effect of subrogation is that the debts are treated as in full life and enjoying the rights of the creditor.

4. The creditors of a decedent are the owners of their share of the assets, and the administrators are trustees.

5. Mosier's Appeal, 6 P. F. Smith 76, recognised.

May 26th 1871.  Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Hess's Estate.]

Appeal from the decree of the Orphans' Court of *Lancaster county*: No. 96, to May Term 1871, distributing the estate of Henry Hess, deceased, in the hands of John B. Herr and Daniel Herr, administrators; the balance being $20,090, which was referred to S. P. Eby, Esq., as auditor to report distribution.

His report exhibited the following facts:—

Henry Hess, the decedent, and Christian Lintner became co-sureties in a number of bonds and notes amounting in the whole to $20,661.12, for Samuel Hess. On the 27th of February 1869, Samuel Hess made an assignment for the benefit of his creditors, and on the 28th Henry Hess died.

The amount of one of the obligations Lintner was compelled by suit to pay, and he paid the remainder under threat of suits. The estates of Henry and Samuel Hess were together insufficient to pay 50 per cent. of their liabilities, including the amount paid by Lintner as surety.

Before the auditor he claimed a dividend upon the *whole* amount so paid by him.

The auditor reported that as Lintner was claiming against the estate of his co-surety on obligations of which he himself was bound to pay the one-half, he was entitled to a dividend only on the one-half of the amount paid by him.

On exceptions, the Orphans' Court (Long, P. J., delivering the opinion) overruled the report of the auditor, and awarded to Lintner a dividend on the whole amount paid by him.

Bair and Shenk, creditors of Henry Hess, appealed to the Supreme Court from this decree of distribution, and assigned the decree for error.

*S. J. Reynolds* and *O. J. Dickey* (with whom was *G. M. Kline*), for the appellants, contended that it was not a case of subrogation, but of contribution. They cited Springer *v.* Springer, 7 Wright 518; Croft *v.* Moore, 9 Watts 451; Agnew *v.* Bell, 4 Id. 32; Miller's Appeal, 11 Casey 481; Patten's Appeal, 9 Wright 151; Dixon on Subrogation 126; Maxwell *v.* Herron, Ross's Leading Cases, 99 Law Lib. 91; 1 Parsons on Bills 250; 2 Id. 253, 254; Wallace's Estate, 9 P. F. Smith 401; Lloyd *v.* Galbraith, 8 Casey 103; Ziegler *v.* Long, 2 Watts 206.

*J. B. Livington* and *A. H. Smith* (with whom was *D. G. Eshleman*), for appellee, contended that Lintner had the right to be subrogated to the creditors whose claims he had paid. They cited Hodgson *v.* Shaw, 3 Mylne and Keen 183: Craythorne *v.* Swinburne, 14 Ves. 160; Yard *v.* Patton, 1 Harris 286; Cottrell's Appeal, 11 Harris 294–295; Mosier's Appeal, 6 P. F. Smith 76–80; Hoover *v.* Epler, 2 Id. 522; McCormick's Adm. *v.* Irwin, 11 Casey 111; Kyner *v.* Kyner, 6 Watts 225; Cuyler

19 P. F. SMITH—18

[Hess's Estate.]

*v.* Ensworth, 6 Paige 32; Croft *v.* Moore, 9 Watts 451; Chees-
borough *v.* Millard, 1 Johns. C. R. 609; Avery *v.* Patton, 7 Id.
211; Lewis *v.* Palmer, 28 New York (1 Tiffany) 271; Rittenhouse
*v.* Levering, 6 W. & S. 190; 1 Pothier on Obligations, Pt. II.
ch. 6, art. 4, p. 427; Miller's Appeal, 11 Casey 481; Patten's
Appeal, 9 Wright 151.

The opinion of the court was delivered, October 9th 1871, by
READ, J.—Henry Hess the father and Christian Lintner the
father-in-law of Samuel Hess became bound as sureties, on bonds
and notes given by Samuel Hess to different individuals.   On
February 27th 1869, Samuel Hess made a general assignment for
the benefit of creditors, and on the next day his father Henry
Hess died insolvent.   Christian Lintner, under legal pressure,
paid these debts for which he and Henry Hess were bound, and
took transfers thereof from the creditors.   The auditor gave a
dividend only on one-half the amount paid, which the court re-
versed and gave a dividend on the whole amount.   The two
estates of Samuel and Henry Hess will not pay together fifty per
cent. of the amount paid by Christian Lintner.

The decision of the auditor was founded upon a Scotch case,
decided by the House of Lords on the 11th of June 1794, re-
versing a decision of the Scotch court, who had held that the
surety was entitled to rank for the whole sums due on those debts
paid by him.   It is to be found in Ross on Principal and Surety,
in Vol. 99 of the Law Library, p. 93.

In the Roman law, the obligation of co-cautioners was under-
taken by the "stipulatio," in which each answered or engaged for
the whole debt.   The consequence was that each was liable *sin-
guli in solidum;* and that there was not in law any obligation or
ground of action to the several cautioners against each other, but
on any one of them paying the debt it was extinguished, and all
the rest of the cautioners discharged.   Two remedies in equity
were afterwards introduced: the *Beneficium Divisionis*, by which
any one might insist on the others being called on to pay their
share; and the *Beneficium Cedendarum Actionum*, by which any
one cautioner on paying the debt, was entitled to require the
creditor to assign his right to him: Shaw's Edition of Bell's
Principles of the Law of Scotland, p. 97, § 268; Cumius' Manual
of Civil Law, p. 204–5.

In 1 Bell's Commentaries on Laws of Scotland, p. 354, it is
said: "Where the principal debtor has failed, and there are two
cautioners, one of whom is solvent and the other insolvent, the
creditor after discussing the principal may either go against the
solvent cautioner, and make him pay the remainder of the debt,
or he may, if he think fit, claim to be ranked for the full amount
of the debt upon the estate of the insolvent cautioner; and after

drawing a proportional dividend make the balance of the debt (after imputing such dividend) from the solvent cautioner. But he can so claim for the *whole* debt only before receiving payment of any part."

"If the creditors go first against the solvent cautioner, and compel him to pay the whole debt, such solvent surety is entitled to be ranked upon the estate of the insolvent cautioner for one-half only of what he pays. For as where there are two cautioners, each stands indebted as principal for one-half of the debt, and as cautioner for the other, when a solvent cautioner pays the whole debt, he necessarily extinguishes that moiety of it in which he stands indebted as principal; and of course he can claim and prove against the co-cautioner's estate only the other moiety which he has thus paid in the character of surety for his co-cautioner,"—and for this doctrine the case cited by the auditor is the authority.

"Where on the other hand the creditor goes first against the estate of the insolvent cautioner, he is entitled to be ranked upon it for the full amount of the debt, and to draw a proportional dividend, in regard that both cautioners are bound to him *in solidum.*"

"The doctrine thus established," says the learned commentator, "does in its consequences seem inequitable and arbitrary, since according as the creditor may think fit to proceed, very different results to the cautioner arise. If the creditor choose to take full payment from the solvent cautioner, it will be ultimately for the advantage of the estate of the insolvent cautioner. If, on the other hand, he thinks fit to go in the first place against the estate of the insolvent cautioner, it will be ultimately for the advantage of the solvent cautioner."

In America, and certainly in Pennsylvania, a surety paying the debt of his principal is entitled to be subrogated to all the rights and remedies of the creditors, as against his co-sureties in precisely the same manner as against the principal debtor, and as substituted in the place of the creditor and entitled to enforce all his liens, priorities and means of payment, and by the Act of 19 & 20 Vict. c. 97, § 5, this is now the law of England.

The debts paid by Christian Lintner and transferred to him, stand exactly in the same position to the assets of the decedent, Henry Hess, as if presented by the creditors themselves, their status being fixed by his death, and nothing having occurred to change or reduce the amount. So far as they existed as debts payable out of the estate, no part of them is paid or extinguished, for the effect of subrogation is to consider them in full life, and enjoying all the rights of the original creditors.

We regard the administrators of the decedent as trustees, and the creditors as cestuis que trust, owners of their share of the

[Hess's Estate.]

assets, and which, applying the principle in Miller's Appeal, 11 Casey 481, and Patten's Appeal, 9 Wright 161, passed to the co-surety who stepped into their shoes when he paid the amount due on such claims.

In Lidderdale *v.* Robinson, 2 Brockenbrough 160, affirmed by the Supreme Court of the United States, 12 Wheaton 594, it was held "where there are two sureties on bills of exchange and specialties, and one of them has paid more than his proportion, and his representatives seek contribution out of the estate of his co-surety, the surety who has overpaid will be subrogated to the rights of his creditors. The representatives of the surety, who has overpaid, are entitled to rank according to the dignity of the claims on which such excess was paid. The principle of substitution applies equally to cases arising between co-sureties and those between a surety and his principal."

Chief Justice Marshall said (p. 168): "The principle which the cases decide is this: Where a person has paid money for which others were responsible, the equitable claim which such payment gives him, or those who were so responsible, shall be clothed with the legal garb, with which the contract he has discharged was invested; and he shall be substituted to every equitable intent and purpose, in the place of the creditors whose claims he has discharged. This principle of substitution is completely established in the books, and being established, it must apply to all persons who are parties to the security so far as is equitable. The cases suppose the surety to stand in the place of the creditors as completely as if the instrument has been transferred to him, or to a trustee for his use. Under this supposition he would be at full liberty to proceed against every person bound by the instrument."

This case leaves no doubt as to the correctness of the decision of the court below.

The opinion of the Chief Justice in Mosier's Appeal, 6 P. F. Smith 76, and the cases cited by him show the extent of the doctrine of subrogation in this state, and directly affirm the principles above stated.

> Decree affirmed, and appeal dismissed at the costs of the appellants.