# Baily's Estate.    Jackson's Appeal.

[Marked to be reported.]

*Principal and surety—Contribution.*

Where two persons are jointly and severally bound as sureties for the debt of another, there is an implied promise by each surety to the other to pay one half of their principal's debt in case of his inability to pay it, and their relation to each other for one half of the debt is that of principal and surety.

*Legacy by surety to principal—Set-off.*

If a surety gives a legacy to his principal the latter cannot recover it from the estate of the former until he has satisfied or furnished indemnity against the demand for which the testator was his surety. If the debt of the principal has been paid by the surety or his estate such payment may be relied on to satisfy or reduce the amount of the legacy, and this is so although the payment was made by the estate after proceedings for the recovery of the legacy were instituted.

Testator and one of his legatees were co-sureties jointly and severally liable for the default of a guardian. After testator's death but before distribution of his estate, the legatee sold and assigned his legacy to another. After the assignment, default was made by the guardian, whereupon testator's executors paid the whole amount of the loss. *Held,* that one half of the loss for which the legatee was liable as co-surety of testator, could be set off against the legacy although the legacy had been assigned to a bona fide purchaser for value without notice.

Argued Feb. 8, 1893.  Appeal, No. 184, Jan. T., 1893, by Elizabeth Jackson, legatee, from decree of O. C. Chester Co., dismissing exceptions to adjudication in estate of Richard B. Baily, deceased.  Before Paxson, C. J., Sterrett, McCollum, Mitchell and Dean, JJ.

Exceptions to report of auditor on exceptions and distribution, in decedent's estate.  Before Hemphill, J.

From the report of the auditor, H. H. Gilkyson, Esq., it appeared that Richard B. Baily gave by his will $4,000, to Francis Worth.  At the time of his death, testator and Francis Worth were sureties upon the bond of Ebenezer Worth, guardian of Jesse Anna Phipps et al.  After the will was probated Francis Worth offered to sell his legacy to J. Mitchell Baker.  Baker called upon one of the executors, and was told that the legacy was all right, and that Worth was entitled to it.  Baker then took an assignment of the legacy, paying for it its full value, less collateral inheritance tax and interest.  Subsequently Ebenezer Worth, guardian, filed his account, showing a balance of $3,592.16 due his wards.  The guardian was unable to pay the balance.  Cloud Pyle was substituted guardian in Worth's place, and to him Baily's executors paid the whole amount.  The auditor awarded the whole amount of the legacy less collateral tax to J. Mitchell Baker, refusing to deduct one half of the loss caused by Ebenezer Worth's default. The auditor reported in part as follows :

" Francis Worth is entitled to a legacy of four thousand dollars under the will of Mr. Baily.  This legacy he sold and assigned to J. Mitchell Baker, on October 3, 1890, and upon the same day the executors accepted notice of the assignment.  On the 13th of October, 1890, Mr. Baker secured a bond of indemnity from Francis Worth, with Samuel P. Webb as surety, on which they covenant to pay and make up any deficiency, to Mr. Baker, which may exist or arise with said legacy by reason of any deduction or diminution in the hands of the executors.

" On March 25, 1891, the executors paid to Cloud Pyle, guardian of Jesse Anna Phipps, the sum of $3,681.96, being the amount due upon a bond given by Ebenezer Worth, a former guardian, and upon which Richard B. Baily and Francis Worth were co-sureties, and jointly and severally both.  The executors

claim the right to set off the one half due on said bond by Francis Worth against his legacy of four thousand dollars in their hands, and J. Mitchell Baker claims the legacy by virtue of his assignment.

" The right of the executors to the set-off claimed must depend upon the proper application of the principles relating to contribution, and the time when that contribution can be en-. forced.

" ' The right of contribution arises between sureties when one has been called upon to make good the principal's default, and has paid more than his share of the entire liability, and the right does not arise until that surety has paid more than his share of the dept : ' Adams' Equity, * 269 ; Wood v. Leland, 1 Metc. (Mass.) 387 ; Bispham's Equity, §§ 528–330 : 1 L. C. Eq., part 1, (text book series,) *120.

" Payment must have been compulsory ; that is, one which the surety could not resist : 4 A. & E. Enc. L., page 5, note.

" Payment in the case was made by the executors to Cloud Pyle on March 25, 1891, and in that payment was included the one half due by Francis Worth upon the bond.   The right of contribution, therefore, arose at that time, and the set-off was complete against Francis Worth's claim for his legacy.   If this were a claim by Worth himself, or by his creditors, this set-off would be effectual, for the creditors of Worth would be in no better situation than Worth himself.   But can the interest of a prior bona fide purchaser for value, without knowledge or notice of this set-off, be affected by it ?   It seems clear to the auditor that it cannot.

" It is a fact not seriously controverted, and the auditor so finds, that Baker was a bona fide purchaser for value of this legacy prior to March 25, 1891, and without notice of any claim for defalcation or set-off.   Everything in the testimony points to an honest and fair assignment of the legacy to an innocent party for value.   Whatever Francis Worth may have known, or feared, or suspected in regard to his right to claim this legacy as against his contingent liability on the guardian's bond, there is no evidence that he communicated these fears or suspicions to Mr. Baker, or gave the latter cause to doubt the merit of his claim.   It is true Mr. Worth testifies that, at the time of the execution of the assignment, Mr. Baker knew that he (Worth)

was a co-surety with Richard Baily upon the bond of Ebenezer Worth. This is denied by Mr. Baker, but whether true or false, such knowledge was not sufficient to put Mr. Baker upon guard or inquiry, particularly in the light of the subsequent acts and silence of the executors themselves. The mere fact that Baker knew of the existence of the bond, if true, could not raise a presumption against the bona fides of the assignment to him, because it was not the bond, but the payment of more than their share by the executors that created the right of set-off against Worth.

" Worth's title in the legacy was complete and perfect at the time of the assignment. He had an absolute, indefeasible interest, capable of assignment, and liable for seizure for his debts. Whatever rights Worth and the executors had in this legacy were fixed and determined by the assignment of the legacy to Baker and notice thereof to the executors. Baker's interest in the legacy is exactly that of the legatee himself, as it stood affected by countervailing equities at the time of the assignment. He took it subject to every defence that would be valid between the original parties, but to no defence that was not valid and subsisting at the time the executors received notice of the assignment. It would be most inequitable and unjust to permit the executors to make any defence against the assignee, which, at the time of the assignment of the legacy or notice of it, they could not have made against Worth himself.

"Another fact not to be lost sight of in adjusting the rights of these parties is that no negligence nor default appears in the conduct of Baker. He took every precaution to inform himself of the real situation by the original parties, and their relations to each other. His course was that of a prudent, cautious man, desirous of ascertaining all the facts relating to the legacy, and of protecting himself from all loss. Before he paid the money on the assignment he called upon Mr. McFarland, the executor, who was in a position to have the best information upon matters pertaining to the estate, and was told by that gentleman 'it (the legacy) was all right, if he had the money he would buy it himself.' All three of the executors signed an acceptance of notice of the assignment before Baker paid the money, and no intimation was given by any of them that

the full amount of the legacy was not due from the estate of Worth; in fact, those of the executors who knew of the guardians' bond did not believe that Worth's liability thereon could be set off against his legacy, and acted upon that presumption. Advice of counsel, if asked, might or might not have changed their views, but as the advice was not asked these views remain firmly fixed. No warning reached Mr. Baker from them that Worth was co-surety upon a bond with Richard B. Baily, that that bond would eventually have to be paid by the estate, and that when paid the executors would claim to set off the one half thereof against Francis Worth's legacy. This silence on the subject, whether proceeding from ignorance of the fact, or mistake as to their legal rights, would effectually bar them from setting up that defence after the assignee had parted with his money on the faith of that silence.

" The silence of two of the executors and the language of one was in effect a declaration to Baker of no set-off and they are estopped from setting up any defence which existed at the date of such declaration. Baker had a right to rely upon the statement of one of the executors that 'the legacy was all right,' and upon the silence of all of them as to any defalcation or defence. If he was misled thereby in purchasing this legacy; if he took it upon the faith of these representations and loss occurs, it must fall upon those whose acts occasioned the loss, for it is a well established principle that where a loss must fall upon one of two innocent persons it shall be borne by him whose act occasioned it.

" Mr. Baker, therefore, being a bona fide purchaser for value, prior to the right of contribution, and without notice of any defalcation or defence upon the part of the executors, is entitled to take the legacy by virtue of his assignment and it will be awarded to him in the distribution."

Exceptions were filed by Elizabeth Jackson, a residuary legatee, as follows:

The auditor erred in allowing the payment to Cloud Pyle, guardian, as a proper credit. [1]

The auditor erred in awarding to J. Mitchell Baker, assignee of Francis Worth, the full amount of the legacy bequeathed to Francis Worth. [2]

The auditor erred in awarding any sum whatever to J. Mitchell Baker, assignee of Francis Worth. [3]

The auditor, having awarded J. Mitchell Baker, assignee of Francis Worth, $3,914, should have surcharged the executors with that amount, having found as a fact that "Baker had a right to rely upon the statement of one of the executors that the legacy was all right, and upon the silence of all of them as to any defalcation or defence." [4]

Exceptions dismissed.  Exceptant thereupon appealed.

*Errors assigned* were (1–4) dismissal of exceptions, quoting them; (5) in not reducing the sum awarded to Baker, assignee of Francis Worth, to the extent of $1,368.32; (6) in not treating the claim made by Baker, as the claim of Francis Worth, in view of the indemnifying bond held by Baker, together with all the facts of the transaction.

*Charles H. Pennypacker, Warren W. Hole* and *T. S. Butler, Wm. Butler, Jr.,* and *Wm. S. Windle* with them, for appellants.— Although the right to call for the interposition of equity does not arise until his principal is in default by neglecting to pay the claim at maturity, it is founded upon a contract which existed before : Beaver v. Beaver, 23 Pa. 170.

The obligation of a surety under a statutory bond is determined by the law under which it is given : Crawley v. Com., 123 Pa. 275.

We should go far beyond the province of interpretation, if we make a legacy good for its amount, and also good for the extinguishment of any amount of debt.  Before we can add this last, we must have some substantial basis in the will to found it on by way of interpretation : Strong's Ex'r v. Bass, 35 Pa. 334; Bouslough v. Bouslough, 68 Pa. 498.

If Worth was bound to pay into this estate the results of his undertaking of suretyship, Baker is likewise bound : Frants v. Brown, 17 S. & R. 287; Bredin v. Neal, 3 P. & W. 190.

A legatee who is indebted to the estate of his testator is not entitled to recover his legacy, nor that which he holds by assignment in right of another legatee, so long as any part of his debt to the estate, equal to the amount of the legacies claimed, remains due and unpaid, and the assignee of such legatee can be in no better situation than the legatee himself : Keim v. Muhlenberg, 7 Watts, 79; Adams, Eq., 8th ed. 223.

In Hawkins v. Day, Lord Hardwick expressed a clear opinion that even an unbroken covenant renders it unjustifiable for an executor to pay a legacy: Williams on Executors, 960.

*Thomas W. Pierce*, for appellee.—The right of one co-surety to demand contribution does not arise out of the obligation by which they are bound for the principal, but upon an equity that he should not pay more than a proper share of the joint burden, and such right dates from the time of the payment: Campbell v. Mesier, 4 Johns. Ch. 339; Adams, Eq. 269; Bispham, Eq. § 328; Baylies, Sureties, 327; Martin v. Frantz, 127 Pa. 389.

The right of Mr. Worth in the legacy accrued at the date of testator's death, and was established by the will. It was a debt of the executors, as the personal representatives, payable out of the assets of the estate, in their hands. The right of the executors to demand contribution from Mr. Worth accrued on March 25, 1891, the date they paid the money to the guardian. Until the latter date the executors could have made no defence to a suit for the legacy, though it had not been assigned.

The legacy and the claim for contribution are not due in the same right. While Mr. Baker, as assignee of the legacy, would be liable to such abatements as the legacy was subject to at the time of assignment, he could not be made liable for debts of the assignor, created or accruing after the assignment was made and notice given: Thompson v. McClelland, 29 Pa. 475; Rider v. Johnson, 30 Pa. 190; Thompson's Ap., 42 Pa. 345; Ammon's Ap., 63 Pa. 284; Filbert v. Hawk, 8 Watts, 443; Strong's Ex. v. Bass, 35 Pa. 333.

If the assignee of this legacy were indebted to the estate, such indebtedness would be a set-off against the payment of the assigned legacy. It is thus apparent that the law relating to set-off is applicable to this case: Keim v. Muhlenberg, 7 Watts, 79.

OPINION BY MR. JUSTICE McCOLLUM, October 2, 1893:

Richard B. Baily and Francis Worth were co-sureties jointly and severally liable for the default of their principal, and in their relation to each other each was a principal for one half the amount recoverable for such default, and a surety for one half of it. If either was compelled to pay the whole amount,

his rights and remedies against his co-surety for the half were the same as against their principal for the whole : Croft v. Moore, 9 Watts, 451 ; Mosier's Appeal, 56 Pa. 76 ; Hess's Estate, 69 Pa. 272, and Wright v. Grover and Baker S. M. Co., to use of Smith, 82 Pa. 80. If a surety gives a legacy to his principal the latter cannot recover it from the estate of the former until he has satisfied or furnished indemnity against the demand for which the testator was his surety : Ross v. McKinney, 2 Rawle, 227. If the debt of the principal has been paid by the surety or his estate, such payment may be relied on to satisfy or reduce the amount of the legacy, and this is so, although the payment was made by the estate after proceedings for the recovery of the legacy were instituted : Beaver v. Beaver, 23 Pa. 167. It is clear, therefore, that in a proceeding by Worth for the collection of the legacy to which he was entitled under and by virtue of the will of Richard B. Baily, the estate could deduct therefrom the amount it was compelled to pay by reason of his default as the testator's co-surety. It was thought, however, by the learned court below, that as Baker purchased the legacy before the payment was made by the estate, such payment was not available as a partial defence to his claim for the whole of it, and in accordance with this view, it, less the collateral inheritance tax, was awarded to him.

In support of this decree, it is urged that when Worth transferred the legacy the estate had no demand against him which was applicable to it, nor equity for the protection of which the executors could withhold from him the whole or a part of it until indemnity was furnished or his liability as co-surety was discharged. We think this contention, to the extent that it denies the existence of such an equity in the estate at the time of the transfer, is unsound. It fails to give proper effect to the relation between co-sureties, and to duly consider the rights and liabilities which spring from it. Prima facie this relation is established between two persons when they unite with a third in an obligation for the payment of his debt, and by this act they become, as we have already seen, his sureties for the whole debt, and sureties of each other for half of it. If their principal fails to pay his debt and the co-sureties pay it in equal proportions, he becomes their debtor and their liabilities to each other as such are discharged, but if one of them is compelled

to pay the whole debt he is entitled to contribution from his co-surety, and may enforce it by an action of assumpsit, or by subrogation to the rights of the creditor. While the action for it cannot be maintained until default and payment as above stated, it is nevertheless true that the right to have and the liability to make contributions inhere in the transaction by which the sureties were jointly and severally bound for the debt of their principal. In Agnew v. Bell, 4 Watts, 31, KENNEDY, J., in delivering the opinion of the court, said: "It is certainly too well established now to be questioned, that where any one or more of those who are co-sureties have had to pay, as such, the debt of their principal or any part thereof, and he is unable to reimburse it, the loss arising therefrom must be borne equally by all of them. Hence has arisen the right to contribution. This right has been considered as depending rather upon a principle of equity than upon contract; but it may well be considered as resting alike on both for its foundation; for, although generally there is no express agreement entered into between joint sureties, yet from the uniform and almost universal understanding which seems to pervade the whole community that from the circumstance alone of their agreeing to be and becoming accordingly co-sureties of the principal, they mutually become bound to each other to divide and equalize any loss that may arise therefrom to either or any of them, it may with great propriety be said that there is at least an implied contract: Deering v. Winchelsea, 2 Bos. & Pull. 270; Craythorne v. Swinburne, 14 Ves. 160. This liability between sureties to contribution in case of loss through the inability of their principal to pay, being known to them at the time of their becoming sureties, may well be considered a great if not the main inducement in many instances to their becoming such." It is therefore incorrect to say that the estate before payment of the principal's debt had no equity against the testator's co-surety and legatee which would enable it to withhold payment of the legacy until it was indemnified or the liability of such co-surety to pay one half of that debt in case of the principal's inability to pay it was discharged. It clearly had such an equity, which in a suit by Worth for the legacy would have been, to the extent mentioned, available as a defence. This equity was not destroyed nor the defence founded upon it

affected by the assignment of the legacy to Baker. He acquir-ed by his purchase such right to the legacy as his assignor had, and this right, as we have seen, was qualified by the estate's equity against the latter as co-surety of the testator. The learned counsel for the appellee concedes in his printed argu-ment that " if the decedent was surety for Worth and that re-lation existed at the time of the transfer, the legacy would be abatable by the amount subsequently paid by the estate or the legacy might be held to await the determination of the liability of the estate." It seems to us that this concession is fatal to the appellees' claim because, in the relation of co-sureties estab-lished between Baily and Worth, there was an implied promise by each to the other to pay one half of their principal's debt in case of his inability to pay it, and as they were jointly and sev-erally bound for such debt their relation to each other for half of it was that of principal and surety.

In the acceptance by the executors of notice of the assign-ment there is nothing prejudicial to the interests of the estate, and we fail to discover anything in the evidence which pre-vents the residuary legatees from successfully asserting, on dis-tribution, their rights to the deduction claimed. We therefore sustain the second, fifth and sixth specifications of error and overrule the first, third and fourth.

Decree reversed and record remitted to the court below, with instructions to enter a decree in accordance with this opinion.