Beyer Estate, Appellant, *v.* Bank of Pennsylvania.

Argued April 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Philip D. Weiss,* with him *McTighe, Brown, Weiss, Bonner & Stewart,* for appellant.

*Albert B. Wrigley,* with him *Kranzley, Wrigley, Yergey, Daylor,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 4, 1972:

The Estate of Katie M. Beyer, Deceased, petitioned the Orphans' Court Division of Montgomery County to issue an order that certain stocks held by the Bank of Pennsylvania, appellee, as collateral for loans made to Clarence E. Beyer, the son of the decedent and executor until his death on November 23, 1970, rightfully belonged to the estate. According to the estate, the blank

"hypothecation agreement" signed by the appellant's decedent could not convey a valid security interest in the stock to the bank because it did not describe the collateral as being stocks let alone describe the specific stocks being pledged. Moreover, the estate contends, since Clarence E. Beyer paid off the original debt subsequent to the pledge, although incurring new ones, and the security agreement did not specifically secure future advances, the bank has no right to keep the stocks as security for future advances.

The Orphans' Court Division concluding that the bank had an enforceable security interest in the stocks, dismissed the estate's petition and the estate brought this appeal. According to U.C.C. §9-204(1), 12A P.S. §9-204(1): "A security interest cannot attach until there is agreement that it attach and value is given and the debtor has rights in the collateral."

The estate first contends that there was no agreement that the security interest remain attached to the stock for the advances made by the bank to Clarence E. Beyer after the decedent had turned over her stock to the bank.

The estate emphasizes that the amount of the loan continuously fluctuated and that all of the previous notes made by Clarence E. Beyer were paid off or merged into a $58,700 note dated April 18, 1969, which date was subsequent to Katie Beyer's death.[1] However, §204(5) of Article 9 of the Uniform Commercial Code specifically provides that: "Obligations covered by

---

[1] We need not be concerned with whether the amount of the loan increased subsequent to the death of Katie Beyer and whether any such increases would have been covered by the security interest, since the amount of the loans was at all times relevant, both prior to and subsequent to the death of Katie Beyer, far in excess of the value of the collateral. The record, in fact, indicates that the amount of the loan decreased between the time of the death of Katie Beyer and the death of Clarence Beyer.

a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment." U.C.C. Art. 9, §204 (5), 12A P.S. §9-204(5).

The estate argues that the bank cannot rely on §9-204 because Katie Beyer signed no security agreement, only a form hypothecation agreement.

However, U.C.C. §9-105(1)(h) defines a "security agreement" as an agreement which creates or provides for a security interest. 12A P.S. §9-105(1)(h). U.C.C. §1-201(3) defines "agreement" to mean: ". . . the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this Act. . . ."

As the Orphans' Court found: "For more than six years prior to her death, decedent permitted her stocks to remain in possession of the bank, and on occasion executed various documents having the effect of ratifying the situation."

In addition, in the hypothecation agreement, there is language that: "Said securities shall be collateral to secure any present or future advances, obligation or liability . . . or any extension or renewal thereof. . . ."

We believe that the prior course of dealing between the parties, including Katie Beyer's assent to the above-quoted language by her signing of the hypothecation agreement form, provides ample evidence of an agreement that the stock which Katie Beyer had pledged to the bank would serve as collateral for the continuing advances by the bank to Clarence Beyer.

The estate also argues that the bank could have no right in the collateral because neither the blank hypothecation agreement nor the stock assignment specifically described the stock. However, under the provisions of the Uniform Commercial Code, a signed se-

curity agreement which contains a description of the collateral is only one of two general ways of making a security interest enforceable against the debtor. U.C.C. §9-203(1)(b). By the terms of U.C.C. 9-203(1)(a), a security interest is also enforceable if the secured party has possession of the collateral.

Since the bank has possession of the collateral, and the prior dealings between the parties, including the signed hypothecation form, constitute an agreement between the bank and the decedent by which the bank may hold the decedent's stock as security for advances made subsequent to the original pledge, the bank is entitled to the stock for its security interest.

Decree affirmed, costs to be borne by the estate.

Mr. Justice MANDERINO dissents.