**Rumpp Estate**

*John L. Harrison, Jr.,* of *Saul, Ewing, Remick & Saul,* for accountants.

*James W. Harrison, Jr.,* in *propria persona.*

TAXIS, *J.,* November 15, 1979—At the time of audit, there were several claims outstanding against decedent's estate. The court was asked to pass upon the questions (1) whether the Heritage Bank (Bank) should be ordered to deliver to the executors the 25 shares of Borden Company, 22 shares of Girard Company, and 20 shares of Kraft, Inc., which the Bank holds as collateral for loans to decedent, and (2) whether James W. Harrison, Jr., as the paying surety, is entitled to the remainder of the proceeds from sale of the securities after the obligation to the Bank is satisfied.

In their petition with rider attached thereto, accountants have stated the unpaid claims of all creditors. The accountants have admitted the following claims in the following amounts: reimbursement of administration expenses of $127 under Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. §3392(1) to Avis H. Rumpp; payment of the balance of the family exemption of $800 under §3392(2) to Avis H. Rumpp; reimbursement of $2,278.95 for decedent's funeral, burial, and medical expenses within six months of death under §3392(3) to Avis H. Rumpp; repayment of balance of loan with interest in the amount of $409.69 to the Bank; balance of principal and interest on loan to Carl F. Rumpp, Jr., guaranteed by decedent, in the amount of $233.77 to Heritage Bank; $14,500 to Internal Revenue Service for possible liability of decedent for taxes due for Legendary Leather, Inc. (Legendary) of which decedent was an officer; $1,730.61

to Provident National Bank; $3,317.52 to Fidelity Bank; and $2,930 to E. C. Lindsay, Jr. and E. S. Evans.

On his appearance slip counsel for the accountants noted that the claim of E. C. Lindsay, Jr., and E. S. Evans should be amended to include F. L. Evans and Rowland C. Evans, Jr., and that the claim should be paid in the proportions indicated in a letter from counsel for the claimants included in the audit papers. The addition is herewith allowed. The Internal Revenue Service did not appear at audit and, therefore, its claim is dismissed. All other claims noted in the petition for adjudication and rider thereto are incorporated by reference and are dismissed.

Contrary to the position taken in the petition for adjudication and notices for audit, the accountants request that the court approve the signing of stock powers by the accountants for decedent's securities held by the Bank as collateral for loans made to the decedent, in order to allow the Bank to liquidate them to satisfy an outstanding balance of $643.43. The facts are as follows: At the time of decedent's death on May 1, 1975, the Bank held shares owned by decedent as collateral for two loans to decedent. Although the Bank has sold most of the securities to cover unpaid loans, the Bank still holds 20 shares of Kraft, Inc., 25 shares of Borden Co., and 22 shares of Girard Co., which it has been unable to sell because the Bank did not hold signed stock powers for them from decedent. The Bank did, however, hold pledge agreements signed by decedent and describing the securities.

As stated by counsel for the accountants, the Bank maintains that, under the Uniform Commercial Code, it has a perfected security interest in the shares because it has both the signed security

agreements and possession of the securities: Act of April 6, 1953, P.L. 3, as amended, 12A P.S. §§9-203(1), 9-305, 9-312. In addition the Bank takes the position that the lack of signed stock powers does not invalidate its security interest: 12A P.S. §§8-301(1), 8-307, 9-203(1)(a). We agree.

Beyer Estate v. Bank of Pennsylvania, 449 Pa. 24, 295 A. 2d 280 (1972), held that where decedent had signed an hypothecation agreement which did not fully describe the securities but had also deposited the securities with the bank as security for loans, possession by the bank was adequate to make the security interest enforceable against the debtor. In a pre-Code case; Novinger v. Barnhart, 29 D. & C. 469 (1937), the court held that where decedent had delivered unsigned shares of stock as collateral to the lender, the holder of the collateral was entitled to convert the stocks to recover the loans and ordered the executrix to assign the shares to the holder. The court directed further that proceeds from the sale of stock in excess of the loan amount be remitted to the executor.

The court finds that the Bank had a perfected and enforceable security interest in these securities and, therefore, directs the accountants to sign stock powers to allow the Bank to satisfy the loan balances.

At the time of audit a question arose as to the rights of James W. Harrison, Jr., in or to these securities and the consequent disposition of the balance of the proceeds after satisfaction of the remaining obligation to the Bank.

Harrison's interest arose as follows: In 1967, decedent deposited with and pledged to the Bank the shares of Girard and Borden. In 1969, he signed a demand note for $3,000 and deposited as security 20 shares of National Dairy, now Kraft, Inc., with

the Bank. The 1969 demand note signed by decedent stated in pertinent part that the security then being deposited "and *any heretofore* or which may hereafter be *deposited with said Bank* and any other property of maker in said Bank's possession *shall be applicable to secure this or any past or any future obligation or liability of maker* to said Bank; and all such property and all securities so deposited and held at any time *shall stand as one continuing collateral security for the whole* or any part of maker's obligations or liabilities to said Bank, so that the deficiency on any one shall be made good from the collateral for the rest." (Emphasis supplied.)

Thereafter, on February 13, 1973, decedent and four other persons, including Harrison, signed a guaranty of joint and several liability for loans up to $20,000 made to Legendary by the Bank. After decedent's death Legendary defaulted on a $20,000 loan which Harrison paid in full. On September 27, 1979, the Bank assigned to Harrison the debt owed to it by Legendary and the guaranty signed by Harrison, decedent, and three other persons.

The Bank holds the three securities pledged by decedent and plans to sell them to satisfy the balance of $643.43 still owed to it. Harrison claims the balance of the proceeds as the surety.

Hess's Estate, 69 Pa. 272 (1871), states the rule that a surety paying the debt of his principal is entitled to be subrogated to all the rights and remedies of the creditors. Subsequently, the debts paid by the surety and transferred to him stand in the same position as if presented by the creditors themselves. Id. at 275. The cosurety who pays the entire amount owed by the principal is entitled to contribution from the cosurety by right of subrogation: Com. ex. rel. Schnader v. National Surety Co., 349

Pa. 599, 37 A. 2d 753 (1944); Baily's Est., 156 Pa. 634, 27 Atl. 560 (1893). Furthermore, in collecting from the principal, the surety becomes entitled to every remedy which the creditor had: U.S. Fidelity and Guaranty Co. v. Quinn, 223 Pa. Superior Ct. 285, 299 A. 2d 338 (1972).

The court finds that Harrison was a surety with decedent for loans made by the Bank to Legendary; that Harrison paid to the Bank the outstanding obligation of Legendary; and that, therefore, he has succeeded to all the rights which the Bank, as creditor, had with respect to the debt. The Bank held the guaranty and the securities deposited by decedent and could have sold the securities of decedent to satisfy the debt. As successor to the rights of the Bank, Harrison is entitled to the remainder of the proceeds from the sale of the collateral after the satisfaction of $643.43 still due the Bank.

## ORDER

And now, November 15, 1979, this adjudication is confirmed nisi.