In re Alvin Lebron JAMES, a/k/a A.L. James, d/b/a James Plumbing Company, Debtor.

Kyle R. WEEMS, Trustee, Plaintiff,

v.

PAUL R. WALKER COMPANY, Defendant.

Bankruptcy No. 1–83–00794.
Adv. No. 1–83–0457.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 28, 1987.

Weill & Weems, Chattanooga, Tenn., for plaintiff.

Harry Cash of Brown, Dobson, Burnette & Kesler, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

The trustee in bankruptcy has moved for partial summary judgment. The main question is a question of law.

The defendant, Walker, was building an apartment complex. Walker let a contract to the debtor to do the plumbing work. They agreed that Walker would withhold 10 percent from the payments due the debtor. Walker withheld 10 percent from what it owed the debtor. Walker did not deposit the money in a separate escrow account. The debtor completed the work, and it passed inspection by the city inspector. Walker, however, did not pay the debtor the remaining 10 percent—the retainage—because it alleges that the debtor failed to do the work properly and it can set off the cost of repairs or damages against the retainage.

The trustee argues that under Tennessee law Walker does not have a right of set-off against the retainage, within the meaning of Bankruptcy Code § 553. The foundation of the argument is the oft-repeated rule that set-off means set-off of mutual debts. 4 L. King, Collier on Bankruptcy ¶ 553.04 (15th ed. 1986). According to the trustee, the retainage is not a debt from Walker to the debtor because of Tenn.Code Ann. § 66–11–144. It provides in part:

(a) Whenever, in any contract for the improvement of real property a certain amount or percentage of the contract price is held back by the owner or contractor, that retained amount shall be deposited in a separate escrow account with a third party giving proper security for the performance of their obligation.

(b) As of the time of the deposit of the retained funds, they shall become the sole and separate property of the contractor, subcontractor, materialman, or laborer to whom they are owed.

The trustee argues that subsection (b) makes the retainage the debtor's property, rather than a debt from Walker to the debtor. Thus, the retainage and Walker's claims against the debtor are not mutual debts that can be set-off under § 553 and Walker must simply turn the money over to the trustee. 11 U.S.C. § 542.

The first problem with the argument is that Walker did not deposit the money in a separate escrow account. The Tennessee statute says that the retainage becomes the property of the person to whom it is owed *when it is deposited in a separate escrow account.* The trustee argues that as a matter of equity the court should treat the situation as if the money was in fact deposited to a separate escrow account. For the purpose of argument, the court will assume the trustee is correct and will treat the case as if Walker had deposited the retainage in a separate escrow account.

The Tennessee statute that is the basis of the trustee's argument goes on to provide:

(c) Upon satisfactory completion of the contract, to be evidenced by a written release by the owner or contractor, all funds accumulated in the escrow account together with any interest thereon shall be paid immediately to the contractor, subcontractor, materialman, or laborer to whom they are owed.

(d) In the event the owner or contractor fails or refuses to execute the release provided in subsection (c), then the contractor, subcontractor, materialman, or laborer shall seek his remedy in a court of proper jurisdiction.

.     .     .     .     .

Tenn.Code Ann. § 66–11–144.

These subsections recognize the true nature of a retainage agreement in a construction contract. The owner retains part of the payments due the contractor to secure the contractor's satisfactory performance of the contract. The retainage secures payment of damages for the contractor's failure to do the work satisfactorily. Since satisfactory performance of the contract usually requires the contractor to pay its subcontractors, suppliers, and laborers, the retainage also secures reimbursement of the owner for payments it makes to subcontractors, suppliers and laborers that the contractor fails to pay.

An analysis of decisions involving competing claims to retained proceeds reveals that such funds serve the primary purpose of securing complete contract performance.

Note, 27 Vand.L.Rev. 389, 397 (1974).

An owner who retains part of the money due the contractor and deposits it in a separate escrow account makes the deposit in its own name so that it has control of the deposit. Even though the Tennessee statute makes the deposit the contractor's property, the owner is not obligated to turn it over to the contractor until the contractor has satisfactorily completed the contract. Tenn.Code Ann. § 66–11–144(c). If the owner alleges that the contractor did not satisfactorily perform the contract, the contractor's remedy is to bring suit. Tenn. Code Ann. § 66–11–144(d). Obviously, the court would not require the owner to surrender the retainage to the contractor before deciding whether it was liable to the owner for breach of the contract. This would amount to rescinding the retainage agreement. The court should order the owner to pay the retainage into court pending a final decision. If the owner prevailed, the court would allow it to recover out of the retainage.

Unfortunately, this does not exactly answer the trustee's argument. The retainage can still be the debtor's property. The set-off would not be a set-off of mutual debts; it would be a recovery by Walker out of the debtor's property which Walker holds as security for the debtor's performance of the contract.

■ This is not the only possible interpretation of a retainage agreement and the resulting escrow deposit, but it appears to be the interpretation adopted by the Tennessee statute, specifically subsection (b) of § 66–11–144. It may be the most practical interpretation. The owner imposes the retainage agreement to secure the contractor's satisfactory performance of the contract. The statute recognizes this fact, and gives the contractor some protection by requiring the retainage to be escrowed and by making it the contractor's property. Under a simple retainage agreement and subsection (b) of the Tennessee statute, the traditional rules of set-off and recoupment will not apply because the owner's debt will already have been paid and the escrow deposit will be the property of the contractor to whom the debt *was* owed.

This does not mean the trustee prevails on his motion for summary judgment. Walker is not entitled to set-off in the technical sense, but the Tennessee statute makes the escrow deposit collateral in Walker's control to secure payment of damages for the debtor's failure to do the work properly. The typical retainage agreement, as interpreted by Tenn.Code Ann. § 66–11–144(b), is a security agreement that gives the owner a lien on the escrow deposit to secure satisfactory performance of the contract and recovery of damages for unsatisfactory performance. The retainage agreement is essentially a pledge agreement under which the retainage is pledged to the owner.

Furthermore, the creation and perfection of a security interest in a deposit account are governed by the common law and not by Article 9 of the Uniform Commercial Code. Tenn.Code Ann. § 47–9–104(a) & 47–9–105(e). *Rowland v. American Federal S & L Ass'n,* 523 S.W.2d 207 (Tenn.App. 1975). See also *In re Amco Products, Inc.,* 17 B.R. 758, 33 UCC Rep. 1093 (Bankr.W.D.Mo.1982); *Duncan Box & Lumber Co. v. Applied Energies, Inc.,* 165 W.Va. 473, 270 S.E.2d 140, 29 UCC Rep. 1731 (1980); *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316, 7 UCC Rep. 1067 (1970). There has been no dispute as to the enforceability of the retainage agreement in this case. 68 Am.Jur.2d, Secured Transactions §§ 54 & 67 (1973).

Assuming the court should treat the case as if Walker made the escrow deposit and assuming the deposit would be the debtor's property, it would be property in Walker's control subject to Walker's lien to secure payment of damages caused by the debtor's failure to do the work properly. Walker could not be required to give up the deposit to the debtor, or the trustee as the debtor's successor, before a decision as to whether the debtor is liable to Walker. See *In re Shepherd,* 17 B.R. 278, 8 Bankr. Ct.Dec. 864 (Bankr.E.D.Pa.1982) (tenant's security deposit held by third party).

The court has not found any other decision under Tennessee law that characterizes a retainage agreement as a pledge-type

security agreement. The court's reasoning, however, would lead to the same result that Judge Lundin reached in *In re Fulghum Constr. Corp.*, 23 B.R. 147, 9 B.C.D. 772, 7 C.B.C.2d 155 (Bankr.M.D.Tenn.1982) (*Waldschmidt v. Columbia Gulf Transmission Co.*).

In that case, Columbia retained part of the progress payments due to Fulghum as agreed under the contract. Columbia did not deposit the retained payments to a separate escrow account. When Fulghum filed its bankruptcy petition, it owed a large amount to its suppliers and subcontractors. Rather than pay the retained amount to Fulghum's bankruptcy trustee, Columbia used it to pay Fulghum's suppliers and subcontractors. Fulghum's bankruptcy trustee sought a turnover of the full amount of the retained payments. Judge Lundin treated the retained payments as a debt from Columbia to Fulghum, but held that Columbia had a pre-bankruptcy claim against Fulghum for the amount of Fulghum's debts to its suppliers and subcontractors. These mutual pre-petition debts were set off.

Judge Bare has reached the same result as Judge Lundin in a case involving Kentucky law. *In re LaFollette Sheet Metal, Inc.*, 35 B.R. 634 (Bankr.E.D.Tenn.1983) (*Dickenson v. Hacker Bros., Inc.*).

 Judge Lundin's reasoning applies to the facts of this case. Since Walker did not segregate the retained payments, the court could treat the retained payments as a debt from Walker to the debtor. Walker could set off against this debt its claims against the debtor. But if the court treats the retained payments as if they were escrowed and became the debtor's property, then Walker has a lien on the escrow account that cannot be taken away before deciding whether the debtor is liable to Walker.

This court's decision is not contrary to the decisions holding that retained funds due to a contractor are not held in trust for the contractor's suppliers and subcontractors. *In re Cedar City Elevator & Refrigerator*, 14 B.R. 623 (Bankr.M.D.Tenn.1981) (*Noland Co. v. Edmondson*); *Sequatchie*

*Concrete Service, Inc. v. Cutter Labs.*, 616 S.W.2d 162 (Tenn.App.1980). The Tennessee statute says that retained and escrowed funds are the contractor's property. The court has concluded that they are also subject to the owner's lien to secure performance of the contract. Performance may include payment to the contractor's subcontractors and suppliers. But this does not make the escrow account a trust for the benefit of the subcontractors and suppliers.

The court concludes that the trustee's motion for partial summary judgment must be denied.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.