**In re PAUL PACK STEEL ERECTION, CO., INC., Debtor.**

**Bankruptcy No. 90–11843.**

United States Bankruptcy Court, E.D. Tennessee, S.D.

April 23, 1991.

George R. Arrants, Jr., Miller & Martin, Chattanooga, Tenn., for Unicon Const. Co.

Stephen R. Beckham, Weems & Beckham, Chattanooga, Tenn., for the Trustee in Bankruptcy, Kyle R. Weems.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Unicon Construction Company has filed a motion to lift the automatic stay so that it can be allowed a set-off. 11 *U.S.C.A.* §§ 362(a)(7) & 553(a) (West 1979). Unicon subcontracted earth work, concrete work, and the erection of a metal building to Paul Pack Steel under three separate subcon-

tracts. Each subcontract allowed Unicon to retain part of the purchase price to secure complete performance by Paul Pack Steel.

Paul Pack Steel is now in bankruptcy, and Unicon has filed a claim in the bankruptcy case for almost $70,000. Unicon wants to set off the retainages under all three subcontracts against its claim in the bankruptcy case.

The retainages under the first two subcontracts total about $3,500. The trustee has agreed to the set-off of those retainages.

The retainage under the third subcontract is $13,000. Unicon wants to set off the entire $13,000 retainage against the balance of its claim. According to the trustee, Unicon can set off only about $1,600 that Paul Pack Steel owes under the third subcontract; it cannot set off any of the debt that arose under the other subcontracts.

The trustee argues that a retainage agreement is essentially a security agreement and should be governed by the same rules. Under this theory, the retainage is not a debt to be set off; it is collateral that Unicon is holding as security for Paul Pack Steel's performance. This leads to the trustee's argument that the set-off can apply only to the debt under the third subcontract because it did not include a cross-collateral clause.

A security interest in personal property is usually created by agreement. The security interest secures only the debts that the agreement says it secures. It does not automatically secure all the debtor's debts to the creditor. *Tenn.Code Ann.* §§ 47–1–201(37), 47–9–102, 47–9–203 & 47–9–204 (Bobbs–Merrill Supp.1990); *In re Bates*, 35 B.R. 475, 37 UCC Rep. 554 (Bankr.M.D.Tenn.1983).

For example, when a borrower gives a security interest in a car to secure a loan, the car secures only the loan debt. It does not secure any other debts—unless the security agreement includes a cross-collateral clause. A cross-collateral clause says that the collateral covered by this security agreement secures the specific debt it was

given to secure *and* any other debt the debtor owes to the creditor.

■ This same rule applies to a pledge; in a pledge arrangement, the debtor gives the creditor possession of the collateral to secure the debt. It does not matter whether the pledge is governed by Article 9 of the Uniform Commercial Code or by some other law. The pledged property still secures only the debts that the parties have agreed it will secure. *Tenn. Code Ann.* §§ 47–1–201(37) & 47–9–102 (Bobbs–Merrill Supp.1990); *Estate of Beyer v. Bank of Pennsylvania,* 449 Pa. 24, 295 A.2d 280, 11 UCC Rep. 636 (1972); 9 *Williston on Contracts* § 1044 at note 13 (3d ed. 1967).

■ The trustee's argument finds support in a Tennessee statute dealing with retainage agreements in contracts for the improvement of real property. The statute requires the contractor to deposit the retainage in an escrow account. *Tenn. Code Ann.* § 66–11–144(a) (Michie Supp.1990). At the time of the deposit, the retainage becomes the subcontractor's property.[1] *Tenn. Code Ann.* § 66–11–144(b) (Michie Supp.1990). The contractor is required to release the retainage to the subcontractor when the subcontractor satisfactorily completes the subcontract. *Tenn. Code Ann.* § 66–11–144(c) (Michie Supp.1990).

Since the escrow deposit is the subcontractor's property, then the deposit can be viewed as payment by the contractor of its debt to the subcontractor for the retainage. The retainage debt having been paid, it can no longer be used as a set-off. Furthermore, the contractor's right to hold the escrow deposit until the subcontractor has completed the subcontract is similar to a security interest in the escrow deposit to secure the subcontractor's performance.[2] However, this security interest or lien is not governed by Article 9 of the Uniform Commercial Code. *Weems v. Paul R.*

*Walker Co. (In re James),* 78 B.R. 159 (Bankr.E.D.Tenn.1987).

For purposes of the trustee's argument, the key part of the statute requires the contractor to release the escrow deposit to the subcontractor when the subcontractor satisfactorily completes *the* subcontract. It does not say that the contractor can keep the deposit to collect debts under other subcontracts. *Tenn. Code Ann.* § 66–11–144(c) (Michie Supp.1990). This appears to mean that, without a cross-collateral clause, the escrow deposit of the retainage is security only for that particular contract or subcontract.

■ Under the common law, the retainage is simply a debt from the contractor to the subcontractor. The contractor can set off its debt for the retainage against *any* debt the subcontractor owes it. *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Warren, Little & Lund, Inc. v. Max J. Kuney Co.,* 115 Wash.2d 211, 796 P.2d 1263 (1990); *Piland Corp. v. League Const. Co.,* 238 Va. 187, 380 S.E.2d 652 (1989); *District of Columbia v. Aetna Ins. Co.,* 462 A.2d 428 (D.C.App.1983).

Though the Tennessee statute appears to change this rule, it may not make a difference when the only ones claiming the escrow deposit are the contractor and the subcontractor. The statute is more likely to cause a problem when a third party also claims the escrow deposit. *See Tenn. Code Ann.* § 66–11–144(d) (Michie Supp.1990); *Rowland v. American Fed. S. & L. Ass'n,* 523 S.W.2d 207 (Tenn.App.1975).

■ Fortunately, the court does not have to face the problem in this case. The Tennessee statute on retainage agreements does not apply. It applies only when the contract price is $500,000 or more. *Tenn. Code Ann.* § 66–11–144(g) (Michie Supp. 1990). None of the three subcontracts was for $500,000 or more. The statute does not

---

**1.** For some reason, the statute goes beyond making the deposit collateral to secure the contractor's debt for the retainage.

**2.** The statute converts the parties' set-off agreement into a contractor's claim to the subcon-

tractor's property, the escrow deposit. This makes it difficult to classify the contractor's interest as a non-UCC security interest, a statutory lien, or a lien of some other kind. 11 *U.S.C.A.* § 101(50), (51), (53) (West Supp.1991).

expressly require the court to add the contract prices, but even if it did, they total less than $500,000.

 Since the statute does not apply, the common law rule should control, and it allows the set-off. The only way for the trustee to avoid this result is to convince the court to engage in a legal fiction. Even though the retainage is just a debt from Unicon to Paul Pack Steel, the court would have to treat it as property of Paul Pack Steel that Unicon is holding to secure performance of the third subcontract. The court declines to do so.

A retainage protects the contractor from the subcontractor's default, but the subcontractor usually has nothing to protect it from the contractor's inability to pay the retainage after the work is done. The statute adds terms to a retainage agreement to correct this one-sided arrangement. However, the legislature has decided that these terms should be forced into a retainage agreement only when the contract price is $500,000 or more. The court should not use a legal fiction to overrule the legislature's decision on which contracts should be subject to the added terms. *See American Industrial Leasing Co. v. Geiger;* 118 Wis.2d 140, 345 N.W.2d 527 (1984).

The court also has not found any equitable reasons for adopting the legal fiction that the retainage is Paul Pack Steel's property pledged to Unicon. With regard to the retainage, Unicon has not failed in any duty to Paul Pack Steel. *See Rentenbach Engineering Co. v. General Realty Ltd.,* 707 S.W.2d 524 (Tenn.App.1985) (awarding interest as if a deposit had been made when the statute applied).

This reasoning is consistent with the court's earlier decision in *Weems v. Paul R. Walker Co. (In re James), supra.* In that case, the retainage had not been deposited in an escrow account, but the court assumed that it had. The court made this assumption only to show that it made no difference to the outcome. The creditor still prevailed over the bankruptcy trustee.

Since the assumption was made for the purpose of argument, it cannot be taken as the court's view of the law. *Public Ser-*

*vice Elec. & Gas Co. v. Technology for Energy, Corp.,* 123 B.R. 979, 987–988 (Bankr.E.D.Tenn.1991). The court did not decide that a retainage should always be treated as the subcontractor's property, without regard to whether the statute applies or the retainage has been deposited in an escrow account.

For these reasons the court declines to treat the retainage as property of Paul Pack Steel which Unicon is holding as security.

 Of course, Article 9 of the UCC does not by itself support the trustee's argument for a cross-collateral clause because Article 9 does not apply to a simple retainage agreement, which is an agreement for a set-off. *Tenn.Code Ann.* § 47–9–104(i) (Bobbs–Merrill Supp.1990).

The result is that the retainage on the third subcontract is simply a debt from Unicon to Paul Pack Steel. Since the trustee has not raised any other defenses to set-off, the court will enter an order allowing the set-off.